# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO



JOSE LUIS MEDINA-TORRES,

Movant,

vs.

CIVIL NO. 01-455 MV/DJS
Criminal No. 00-851 MV

UNITED STATES OF AMERICA,

Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. This a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255. Movant is incarcerated at the Federal Correctional Institution at Forest City, Arkansas. There he is serving a sentence of seventy-seven (77) months as a result of his conviction, pursuant to a plea of guilty, of the charge of re-entering the United States after having been deported. The proceedings heretofore are uncomplicated. Movant was apprehended after having been found in the United States. He readily admitted that he was a citizen of Mexico, that he had been previously deported, and that he had not sought permission to re-enter the United States.

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



Subsequent to his apprehension Movant, with the advice of counsel, asked the Court to extend the time within which the prosecution was required to present the allegations against him to a Grand Jury. The purpose of that request was to facilitate pre-trial discovery and to permit Movant to negotiate a resolution of the charge against him. This request was made some six days after his apprehension and evidences an early determination on Movant's part to end the case against him. Negotiations were apparently successful, for on June 20, 2000, Movant entered his plea to an information charging him with re-entry after deportation.

2. Movant asserts four grounds for relief. First, he contends that his counsel was ineffective because he failed to file a direct appeal. Secondly, he argues that he is entitled to relief because his previous criminal history was used to enhance his sentence. Third, Movant says that he did not understand the procedures fully at his sentencing. Finally, Movant asserts that "cultural assimilation" was not considered with respect to his sentence and that his counsel failed to raise that issue as a relevant factor indicating a downward departure. These four claims may all be analyzed under the rubric of "ineffective assistance of counsel" since they all implicate in one way or another the alleged failures of counsel.[2]

3. To succeed on his ineffective assistance of counsel claims Movant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, he must "show that counsel's representation fell below an objective standard reasonableness" Strickland, 466 U.S. at 688. Secondly, he must show that "there is a reasonable probability that, but for counsel's unprofessional

---

[2] Respondent asserts that the latter three claims are procedurally barred because they could have been raised on direct appeal. Because this Court views the four claims for relief as challenges to the performance of counsel, procedural default is not applicable. Ineffective assistance of counsel claims cannot be brought on direct appeal. See United States v. Galloway, 56 Fd. 3d 1239, 1240 (10th Cir.1995).

errors, the result of the proceedings would have been different." Id. at 694; See also, Hatch v. Oklahoma, 58 F.2d 1447 (10th Cir. 1995). Movant cannot meet either of the requirements of Strickland. The primary reason for this inability is that in his effort to obtain relief, Movant only makes conclusory statements regarding his counsel's failures of representation. Ordinarily, such conclusory statements are insufficient to state a successful claim. See United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir.1994) (concluding that "[a]lthough we must liberally construe Defendant's *pro se* petition, we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.") (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). The conclusory and unspecific allegations of the instant motion are particularly insufficient to satisfy the prejudice prong of Strickland. See, Stafford v. Saffle, 34 F.3d 1557, 1564-65 (10th Cir.1994); United States v. Mealy, 851 F2d 890, 908 (7th Cir.1988).

4. Leaving aside their conclusory nature, Movant's claims fail based upon the record. Early on, Movant was eager to resolve the criminal case against him by way of negotiation. This is indicated by the fact that he signed a document requesting additional time before presentation of his case the Grand Jury so that he could negotiate a plea with the government. United States v. Jose Luis Medina-Torres, Cr. No. 00-0851, Waiver of Preliminary Hearing and Continuance of Grand Jury Presentment filed April 18, 2000 (Docket No. 6). At the plea hearing held some three months after his arrest Movant related, under oath, that he understood the charge against him, understood the penalty that could be imposed and that he was satisfied with the representation provided to him by counsel (Transcript of June 20, 2000 Plea Hearing, pp 2-4). Thereafter, at his sentencing hearing, Movant related to the Court that he continued to be satisfied with counsel and was told that the guideline sentencing range was to be 77 to 96 months (Transcript of September 28, 2000 Sentencing

Hearing, pp.2-4). At that point, when asked to give his view of the criminal proceeding, Movant stated "I just want to get this over with..." (Transcript of September 28, 2000 Sentencing Hearing, p. 4). Further, counsel and the Court discussed the issue of appeal at the sentencing, with counsel stating in the presence of Movant that because the sentence was within the guideline range "there basically is no appeal". Id. at page 7.[3] In light of these facts, Movant cannot show that but for counsel's alleged errors the result of his prosecution would have been different. An appeal under these circumstances would be fruitless and could not produce a different result. Movant does not allege that the sentence imposed was contrary to law or that it was a result of a misapplication of the guidelines. Therefore, the Court of Appeals would not have had jurisdiction to hear an appeal. See United States v. Sanchez, 146 F.3d 796 (10th Cir. 1998); §18 U.S.C 3742(a).

5. Likewise, Movant's claim based upon his counsel's alleged failure to challenge the use of his prior convictions to enhance his sentence is without merit. Presumably Movant, having consulted the appropriate in-house counsel at Forest City Correctional Institution, intends the claim as a reference to Apprendi v. New Jersey, 530 U.S. 466 (2000). However, Apprendi has no application here, since that decision specifically excluded prior convictions which increase a sentence as a category of facts which must be proven to a jury. United States v. Villalva, 232 F.3d 1329, 1331-32 (10th Cir. 2000). Thus the failure of counsel to challenge Movant's prior conviction

---

[3] Appended to the United States' Response is a document entitled "Attorney Affidavit". Therein Francisco Mario Ortiz, Movant's counsel in Cr. 00-851, says that Movant was advised by him that there was no appealable issue. The document also relates counsel's belief that Movant understood that fact and that he further understood the process that was followed in his case. The document is silent on whether or not Movant requested that an appeal be taken. Movant does not allege that he made such a request in the instant Motion. However, because the purported affidavit is not given under oath, its content will not be considered.

4

at sentencing was not an unprofessional error within the meaning of Strickland and could not have lead to a different result.

6. Movant alleges that he did not understand the procedures undertaken at his sentencing. Given a fair reading, this claim leads to the conclusion that his counsel did not explain those procedures to him prior to the hearing. As previously noted, this conclusory allegation is unsupported by any factual averment and must fail on that ground alone. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that even *pro se* litigants must allege sufficient facts on which a recognized legal claim could be based and that conclusory allegations will not suffice). In addition, the record of the plea and sentencing hearing indicate that Movant did understand the proceedings and on both occasions expressed his satisfaction with counsel. That satisfaction must necessarily encompass an explanation of the process. Movant's declarations in open Court carry a strong presumption of verity. The subsequent presentation of conclusory allegations are subject to summary dismissal, as are contentions that, in the face of the record, are wholly incredible. See Marchibroda v. United States, 368 U.S. 487, 495-496 (1962).

7. Movant's final claim relates his belief that his attorney improperly failed to raise the issue of "cultural assimilation" with respect to his sentence and thus denied him his right to effective counsel. It appears that Movant is trying to graft the discussion of "cultural assimilation" contained in United States v. Lipman, 133 F.3d 726 (9th Cir. 1998) onto the circumstances of his sentencing. In general, cultural assimilation in the context of the Sentencing Guidelines is akin to family and community ties referred to in U.S.S.G. §5H1.6. Lipman, 133 F.3d at 730. The holding in Lipman is limited those cases where cultural assimilation has some bearing on the defendant' culpability for the particular offense at issue. United States v. Marin, 1 Fed Appx 845, 2001WL15529 (10th Cir.,

Jan. 8, 2001)(unpublished disposition). In <u>Lipman</u>, the defendant asserted that his reentry into the United States was motivated by his "cultural, emotional and psychological ties" to the United States. This claim was based on the following facts: Lipman had resided in the country for twenty three years, having arrived at age twelve; his residency here had been legal throughout that period, during which time he had married an American citizen and fathered five children during the course of that marriage; in addition, Lipman had fathered two other American born children; further, his entire family, including his mother, lived in the United States and all were American citizens. <u>Lipman</u>, 133 F.3d at 729.[4] In contrast, Movant offers nothing to support a claim that he is in effect a "de facto American" which required him to re-enter the country. That he did not labor under any cultural or family imperative to re-enter the United States is made quite clear by his statement to the Court at sentencing. There he told the Court..."I just want to get this over with, so that I can get back to my country...." (Transcript of September 28, 2000 Sentencing Hearing, p.4). There being no basis for a downward departure based on "cultural assimilation", it could not be an unprofessional error on the part of counsel not to raise the doctrine in connection with Movant's sentencing.

### RECOMMENDED DISPOSITION:

That the instant §2255 motion be denied and this matter dismissed with prejudice.

_____
DON J. SVET
UNITED STATES MAGISTRATE JUDGE

---

[4] In spite of these facts, Lipman's efforts to obtain a downward departure on the grounds of cultural assimilation were fruitless. <u>Lipman</u>, 133 F.3d at 731.